L.U. SHEEP COMPANY, a Wyoming Corporation; Gary Kellogg and Brenda Kellogg, husband and wife; and Maxine Kellogg, Appellants (Defendants),

v.

BOARD OF COUNTY COMMISSIONERS OF the COUNTY OF HOT SPRINGS, Wyoming, Appellee (Plaintiff).

No. 89–148.

Supreme Court of Wyoming.

April 11, 1990.

John W. Davis of Davis, Donnell, Worrall & Bancroft, P.C., Worland, and James L. Applegate, Hirst & Applegate, Cheyenne, for appellants.

J. John Sampson, Sheridan, for appellee.

Before CARDINE, C.J., and THOMAS, URBIGKIT, MACY and GOLDEN, JJ.

THOMAS, Justice.

The question of what is the proper instruction to be given to the jury with respect to the measure of damages to the landowner for a partial taking of a privately owned road under the Wyoming Eminent Domain Act, §§ 1–26–101 to –817, W.S.1977 (the Act), is the central issue to be resolved in this case. Collateral issues are asserted relating to the propriety of the cooperation of the United States Forest Service (USFS) in the road project; whether that cooperation resulted in the USFS being an indispensable party to the proceedings; whether Hot Springs County brought the action under the proper statutes; whether the trial court erred in excluding from evidence the report of court-appointed appraisers; and whether the trial court erred in granting motions submitted by Hot Springs County to suppress testimony concerning the involvement of the USFS in the project; certain testimony from the landowners whose property was taken; evidence about the rental value of the land; and evidence relating to road construction costs.

The trial court failed to instruct the jury about the proper measure of damages in this instance, and we must reverse and remand the case for further proceedings consistent with this opinion. Because the same issues are likely to arise upon retrial, we address the rulings of the trial court on the motions to suppress evidence. Those rulings appear to be incorrect in some instances in light of the proper measure of damages. We affirm the rulings of the trial court that established the posture of the USFS in connection with this case and excluded evidence concerning the involvement of the USFS. We also agree with the trial court that Hot Springs County could bring this case under the Act rather than under the statutes relating to the establish-

ment of a county road. Sections 24–3–101 to –127, W.S.1977.

In their brief on appeal, styled "Brief for Appellants/Defendants," L.U. Sheep Company, and Gary Kellogg, Brenda Kellogg, and Maxine Kellogg (Kelloggs), set forth the following issues to be addressed by the Court:

"I. Whether or not the district court erred when it refused to instruct in accordance with existing statutory law.

"II. Whether or not the district court erred when it ruled that the joint enterprise of Hot Springs County and the Forest Service regarding the Grass Creek road project did not violate either Wyoming statutes or the Wyoming Constitution.

"III. Whether or not the district court erred when it held that it was proper for Hot Springs County to proceed under §§ 1–26–105 *et seq.*,[1] rather than the county road statute, §§ 24–3–101, *et seq.*

"IV. Whether or not the district court erred when it refused to allow any evidence from the three appraisers who had been previously appointed by the court.

"V. Whether or not the district court erred by granting any of several motions in limine.

"VI. Whether or not the district court erred when it refused to hold that the Forest Service was an indispensable party to these proceedings."

The Board of County Commissioners of the County of Hot Springs, Wyoming (Hot Springs County), in its Brief for Appellee/Plaintiff, recites the same six issues as the appellants, and it adds the following statement of an additional issue:

"VII. Whether or not the jury verdict was supported by competent evidence presented at trial and should, therefore, be affirmed."

Hot Springs County filed its complaint seeking condemnation of a private road that had been constructed across the lands of L.U. Sheep Company and the Kelloggs. The action was commenced on March 3, 1988, well after the effective date of the Act, and the County did invoke its power of eminent domain pursuant to § 1–26–801. The purpose of the condemnation was to provide access to the Shoshone National Forest for recreation, the harvesting of timber, and the development and operation of oil and gas leases. The USFS had agreed to finance the acquisition of this road by Hot Springs County, and the record justifies the conclusion that the acquisition of the road was accomplished at the behest of the USFS.

The road involved in this case runs from Grass Creek in northern Hot Springs County to the border of the Shoshone National Forest. The road, which follows Grass Creek, had existed as a private road for many years. The length of the road where it crossed the Kelloggs' property was .94 of a mile and 6.84 miles where it crossed the property of L.U. Sheep Company. Significant improvements had been made to the road in the 1950s including, at the time of trial, about eighteen cattle guards and thirty-five culverts. Over the years, the landowners had permitted the road to be used for access to a youth camp and to the sites of timber and oil and gas operations. The owners, however, had denied access to other users of the road. Most of the surrounding land is used as pasture and hay meadows.

At the time their answer was filed, the Kelloggs and L.U. Sheep Company also filed a motion to join the USFS as an indispensable party, invoking the provisions of Rule 19, W.R.C.P. That was met by a subsequent motion on the part of Hot Springs County to suppress any mention of the USFS in the condemnation proceedings. The trial court found that the agreement between Hot Springs County and the USFS did not make the USFS an indispensable party in that a determination without the involvement of the USFS would not affect its substantial rights. For that reason, it denied the motion of the Kelloggs and L.U. Sheep Company, but it granted the motion

---

**1.** We assume appellants meant section 1–26–501. Sections 1–26–101 to –405, including § 1–26–105, were repealed in 1981.

of Hot Springs County, ruling that any reference to the USFS would be immaterial and irrelevant.

The procedural effort of Hot Springs County to confine the proceedings continued, and it filed motions to suppress evidence relating to the rental value of the private road; evidence demonstrating road construction costs; and testimony from the landowners about the collateral effects of making the road a public road. All of these motions were granted by the trial court. The judge stated that testimony from landowners concerning livestock losses and increased dust attributable to making the road public would be entirely speculative. No definite reasons were articulated for granting the other two motions. The argument of Hot Springs County was that the rental value of the road and the costs of construction were not relevant in determining the "before and after values" of the ranch properties that the partial taking affected. Hot Springs County maintained that the only proper measure of compensation in the case was to compare, in each instance, the value of the entire property before the partial taking with the value of the entire property after the partial taking.

In August of 1988, the parties stipulated to certain facts and issues in the case. The effect of that stipulation was to establish the right of Hot Springs County to condemn the road under the Act, and the only issue left to be resolved was the question of just compensation for the condemnation of the private road. The trial court entered an order that reflected the stipulation of the parties and, pursuant to Rule 71.1(e), W.R.C.P., also provided for the appointment of three independent appraisers.

The appraisers were instructed by the court with respect to making a determination of the amount of just compensation, and they were told to be guided by §§ 1-26-701 through -713, W.S.1977, which is the compensation section of the Act.[2] Prior to arriving at their determination of the values of the respective takings, the appraisers viewed the road, received and examined evidence, and held a hearing. The report of the appraisers was filed with the court on March 8, 1989.

The appraisers determined that the just compensation for the taking of the Kellogg lands was $33,350 and, for the taking of the lands of L.U. Sheep Company, just compensation was determined to be $128,000. In arriving at the just compensation for the value of the Kellogg lands taken, the appraisers included the loss of revenues for use of the road and damages to the remaining property caused by the general public. The appraisers relied upon these same factors in arriving at the value of the lands taken from L.U. Sheep Company, and they

2. The appraisers were instructed as follows:
   "The measure of just compensation to be paid to Defendant is the difference between the fair market value of the Defendant's lands immediately prior to the imposition of the easement and the fair market value of the Defendant's lands immediately thereafter.
   "What comparable land changes hands for on the market at about the time of taking is usually the best evidence of market value available. Sales at arm's length of similar property are the best evidence of market values. These sales are referred to as comparable sales. In taking comparables into consideration, you should give weight only to those sales which are not too remote in time and made only where general market and economic conditions were similar to those existing on the date of the taking and within the same immediate area.
   "You are instructed that your assessment of the value of land actually taken in this matter shall be based on market value. Market value has been generally defined as the price the land will bring when it is offered for sale by one who desires but is not obliged to sell it, and is bought by one who desires but is not obliged to buy it. The damages cannot be enhanced by the landowner's unwillingness to sell because of any sentiment which he has for the property.
   "In determining the reduction, if any, in the fair market value of the Defendant's lands, you may consider all factors which you find to have an effect on fair market value. However, any factors which you consider must be direct and certain and may not be remote, imaginary or speculative.
   "In determining damages, if any, to Defendant's remaining land, you may consider every lawful use the Plaintiff may make of the land condemned, and you may consider every element of damage affecting the fair market value of the remaining lands resulting from use and maintenance of the road on the easement or way of necessity."

allowed additional compensation to that landowner for the diminution in value of its remaining lands. Hot Springs County labeled the appraisers' determinations improper and unacceptable.

Pursuant to the provisions of Rule 71.-1(j), W.R.C.P., the County requested a jury trial, and one was conducted on April 18 and 19, 1989. The appraisers' report was offered in evidence by the Kelloggs and L.U. Sheep Company, but the trial court refused to receive it into evidence stating that it was hearsay and that it would not assist the jury. At the trial, both sides presented experts who testified with respect to the appropriate compensation for the lands taken. The expert presented by the Kelloggs and L.U. Sheep Company testified that the value of the Kellogg land that was taken was $25,225 and that the value of the lands taken from L.U. Sheep Company was $201,012. Those amounts included compensation for the effect that the public road would have on the remaining lands. One of the experts called by Hot Springs County determined the value of the Kellogg taking to be $1,200 and the value of the L.U. Sheep Company taking to be $8,700. A second expert called by Hot Springs County placed those values at $1,950 for the Kellogg taking and $7,292 for the L.U. Sheep Company taking. These amounts represented the determinations made by the experts of the value per acre of the land taken multiplied by the number of acres taken.

The Kelloggs and L.U. Sheep Company offered these instructions on compensation to be given to the jury:

"Defendants' Instruction No. 24

"The fair market value of property for which there is relevant market is the price which would be agreed to by an informed Seller who is willing but not obligated to sell and informed Buyer who is willing but not obligated to buy.

"The fair market value of property for which there is no relevant market is its value as determined by any method of valuation that is just and equitable.

"In addition, the fair market value of the remainder of the property on the valuation date shall reflect increases or decreases in value caused by the proposed project, including the increase in damage to property by the general public which could reasonably be expected to occur as a result of the proposed actions of Hot Springs County.

"Defendants' Instruction No. 25

"This case involves a partial taking of property and, therefore, the measure of compensation is the greater of the value of the property rights taken or the amount by which the fair market value of the entire property immediately before the taking exceeds the fair market value of the remainder immediately after the taking."

The Kelloggs and L.U. Sheep Company relied upon §§ 1–26–702, –704, and –706, W.S. 1977, as authority for these instructions, but the trial court refused to give them. Instead, and over the objection of those parties, the jury was instructed that just compensation amounted to the difference between fair market value of the ranching properties as a whole immediately before and immediately after the taking.[3] The jury was instructed as to the definition of fair market value and a method for determining that value,[4] and the jury also was

---

**3.** Instruction No. 6, given by the court, advised the jury:

"The measure of just compensation to be paid to the Defendants is the difference between the fair market value of Defendants' land immediately prior to the imposition of the easement and the fair market value of the Defendants' land immediately thereafter."

**4.** Instruction No. 7, given by the court, advised the jury:

" * * * The market value is the price which would be agreed to by an informed seller who is willing but is not obligated, to sell it and by an informed buyer who is willing, but not obligated, to buy * * *."

Instruction No. 9, given by the court, advised the jury:

"In determining market value, you may take into consideration evidence of sales of land that you find to be comparable to the land involved in this lawsuit which occurred within a time reasonably near the date of the taking."

instructed not to consider those factors which it might find to be too remote, imaginary, or speculative.[5] The jury was permitted to consider the effect of the county's use, which would be use by the public, of the road on the remaining lands. In addition, the jury was instructed that Hot Springs County was not responsible for the criminal acts of third parties on the Kellogg and L.U. Sheep Company lands due to the establishment of the public road.

The jury returned a verdict finding that just compensation to the L.U. Sheep Company for lands taken was $8,700 and just compensation to the Kelloggs for lands taken was $1,950. The district court entered a Judgment and Order reflecting that verdict.

The question of the proper factors to be taken into account in connection with a partial taking of land is also determinative of several of the evidentiary questions raised in this appeal. We cannot criticize the trial court for faithfully following the law articulated in *Coronado Oil Company v. Grieves*, 642 P.2d 423 (Wyo.1982), where we held that the trial court committed reversible error by allowing evidence of damage factors that were not related to the "before and after" rule for the valuation of property. We there quoted, at 642 P.2d 433, the following language from *Continental Pipe Line Company v. Irwin Livestock Company*, 625 P.2d 214, 216, 25 A.L. R.4th 607 (Wyo.1981):

" ' * * * [W]here there is a partial taking of property, as here, which will result in damages to the remainder not taken, the amount of just compensation to be awarded for that "taken or affected" is determined by application of the "before and after" rule, i.e. just compensation is the difference between fair market value of the entire parcel before the taking and that after the taking.' "

The trial court's instructions to the jury faithfully reflected the decision in the *Coronado* case to the extent that the court's Instruction No. 11, relating to factors to be taken into account in determining fair market value, was taken verbatim from an instruction we cited with approval there.

■■■ The Act became effective in 1981, and is the law to be applied in this case. In *Coronado*, 642 P.2d at 433, we clearly stated in n. 4 that the Act had no application to that case. The Act covers the entire subject of eminent domain except that the provisions of the Wyoming Rules of Civil Procedure are preserved to the extent that they do not conflict with the statute. Section 1–26–501, W.S.1977. We presume that the legislature adopts statutes with full knowledge of existing state law, including court decisions and, for that reason, the legislature implicitly abrogated earlier contrary decisions in the law of eminent domain when it adopted the Act. *Matter of Voss' Adoption*, 550 P.2d 481 (Wyo.1976); *Snell v. Ruppert*, 541 P.2d 1042 (Wyo. 1975). It follows that the reliance of the trial court on the rules of law articulated in *Coronado* was misplaced. In resolving the issue of the appropriate determination of compensation for a partial taking, we must define what the statute provides for damages and determine in what respects *Coronado* is not in harmony with the current statutes.

The repeal of §§ 1–26–101 to –405, W.S. 1977, and their replacement with the Act was the culmination of the work of a joint legislative committee that was commenced in 1979. See Report No. 1, Eminent Domain Study, Joint Judiciary Interim Committee (1979). The impetus for the study and the subsequent revision of the eminent domain statutes was the increased use of the power of eminent domain by public

---

5. Instruction No. 11, given by the court, advised the jury:

"In determining the reduction, if any, in the fair market value of Defendants' land, you may consider all factors which you find to have an effect on fair market value. However, any factors which you consider must be direct and certain and may not be remote, imaginary, or speculative.

"In determining damages, if any, to Defendants' remaining land, you may consider every lawful use the Plaintiff may make of the land condemned, and you may consider every element of damage affecting the fair market value of the remaining land resulting from construction, operation, maintenance, and the use by Plaintiff of the County road easement on Defendants' land."

utilities and energy-related industries that experienced tremendous growth in Wyoming during the preceding years. Comment, *Wyoming Eminent Domain Act: Comment on the Act and Rule 71.1 of the Wyoming Rules of Civil Procedure*, 18 Land & Water L.Rev. 739 (1983). The Committee noted that the earlier statutes pertained to compensation only in a marginal way and that the rules for compensation at that time were guided by Rule 71.1, W.R.C.P., and the decisions of the Wyoming Supreme Court. Report No. 2, Eminent Domain Study, Joint Judiciary Interim Committee, at 16 (1979). The new Act changed this aspect of the law.

The sections relating to compensation for the taking of land by the power of eminent domain are found in Art. 7 of the Act. The following sections are pertinent to the disposition of this case:

"Section 1–26–702. Compensation for taking:

"(a) Except as provided in subsection (b) of this section, the measure of compensation for a taking of property is its fair market value determined under W.S. 1–26–704 as of the date of valuation.

"(b) If there is a partial taking of property, the measure of compensation is the greater of the value of the property rights taken or the amount by which the fair market value of the entire property immediately before the taking exceeds the fair market value of the remainder immediately after the taking.

"Section 1–26–704. Fair market value defined:

"(a) Except as provided in subsection (b) of this section:

"(i) The fair market value of property for which there is a relevant market is the price which would be agreed to by an informed seller who is willing but not obligated to sell, and an informed buyer who is willing but not obligated to buy;

"(ii) The fair market value of property for which there is no relevant market is its value as determined by any method of valuation that is just and equitable.

\* \* \* \* \* \*

"Section 1–26–706. Compensation to reflect project as planned.

"(a) If there is a partial taking of property, the fair market value of the remainder on the valuation date shall reflect increases or decreases in value caused by the proposed project including:

"(i) Impairment of the use of his other property caused by the condemnation; and

"(ii) The increase in damage to his property by the general public which could reasonably be expected to occur as a result of the proposed actions of the condemnor;

"(iii) Any work to be performed under an agreement between the parties.

"Section 1–26–709. Compensation for growing crops and improvements.

\* \* \* \* \* \*

"(b) The compensation for an interest in improvements is the higher of the fair market value of the improvements, assuming their immediate removal from the property, or the amount by which the existence of the improvements enhances the fair market value of the property.

\* \* \* \* \* \*

"Section 1–26–711. Taking of leasehold interest.

"(a) If all or part of the property taken includes a leasehold interest, the effect of the condemnation action upon the rights and obligations of the parties to the lease is governed by the provisions of the lease, and in the absence of applicable provisions in the lease, by this section.

"(b) If there is a partial taking and the part of the property taken includes a leasehold interest that extends to the remainder, the court may determine that:

"(i) The lease terminates as to the part of the property taken but remains in force as to the remainder, in which case the rent reserved in the lease is extinguished to the extent it is affected by the taking; or

"(ii) The lease terminates as to both the part taken and the remainder, if the part taken is essential to the pur-

poses of the lease or the remainder is no longer suitable for the purpose of the lease.

"(c) The termination or partial termination of a lease under this section shall occur at the earlier of the date on which, under an order of the court, the condemnor is permitted to take possession of the property, or the date on which title to the property is transferred to the condemnor.

"(d) This section does not affect or impair a lessee's right to compensation if his leasehold interest is taken in whole or in part."

■ In an earlier appeal of the *Coronado* case, we said that eminent domain statutes are to be strictly construed in favor of the landowners to the end that no person will be deprived of the use and enjoyment of his property except by a valid exercise of that power. *Coronado Oil Company v. Grieves*, 603 P.2d 406 (Wyo. 1979). We have no question that the legislature intended to continue this rule of construction when it adopted the present Act. In drafting the Act, the legislature looked to the California eminent domain law, Cal.Civ.Proc.Code §§ 1230.010–1273.-050 (West 1982), and the Uniform Eminent Domain Code (U.L.A.), 13 U.L.A. 1 (1986).[6] Comment, *Wyoming Eminent Domain Act: Comment on the Act and Rule 71.1 of the Wyoming Rules of Civil Procedure*, 18 Land & Water L.Rev. at 739–40. Most of Art. 7 of the Wyoming Eminent Domain Act is taken from the Uniform Eminent Domain Code, §§ 1001 to –16. We do note the difference in § 1–26–706, W.S.1977, entitled "Compensation to reflect project as planned," which is quoted above and § 1006 of the Model Eminent Domain Code which has the same title. Section 1006 of the Model Eminent Domain Code reads as follows:

"(a) If there is a partial taking of property, the fair market value of the remainder on the valuation date shall reflect increases or decreases in value caused by the proposed project including any work to be performed under an agreement between the parties.

"(b) The fair market value of the remainder, as of the date of valuation, shall reflect the time the damage or benefit caused by the proposed improvement or project will be actually realized."

It was this language that was included in Report No. 3, Eminent Domain Study, Joint Judiciary Interim Committee, at 14 (1979).[7] In arriving at a determination of the legislative intent, we consider the plain language of the statute. E.g. *Belle Fourche Pipeline Company v. State*, 766 P.2d 537 (Wyo.1988). The overall purpose of the Act and the plain language of § 1–26–706 demonstrate a legislative intent that the landowner should be compensated for all losses that he can establish as attributable to the taking. The adjustment in the language by the legislature from the language of the Uniform Act makes this intent quite evident.

■ Our decision in the second *Coronado* case, 642 P.2d 423, did not consider the expanded range of compensation factors that the legislature recognized in adopting the Act. Pursuant to the provisions of the Act, the landowner whose property is the subject of a partial taking is entitled to prove not only the difference between the fair market value of the property prior to the taking and the fair market value of the remainder after the taking, under the "before and after rule," but he also is entitled to prove the value of the property rights taken. The measure of compensation is the greater of those alternative amounts. Section 1–26–702(b), W.S. 1977. The landowner may prove the fair

---

6. The Uniform Eminent Domain Code was approved by the National Conference of Commissioners on Uniform State Laws in 1974. It became the Uniform Law Commissioners' Model Eminent Domain Code in 1984. 13 U.L.A. 1. The only state to substantially adopt the Model Eminent Domain Code has been Alabama, but its statutes contain numerous variations, omis-

sions, and additional matter. 13 U.L.A. 4 (1986).

7. A latter draft proposed eliminating subsection (b) of the Uniform Act from the Wyoming statute. Working Draft No. 4, Eminent Domain Study, Joint Judiciary Interim Committee, at 22 (1980).

market value of the property taken by any method of valuation that is just and equitable if there is no relevant market establishing the value. Section 1–26–704(a)(ii), W.S.1977. In § 1–26–706(a)(i), the legislature provided that the fair market value of the remainder should reflect increases or decreases in value caused by the proposed project including "impairment of the use of [the landowner's] other property caused by the condemnation" and, in the following subsection (ii), provision is made for "increase in damage to [the landowner's] property by the general public which could reasonably be expected to occur as a result of the proposed actions of the condemnor; * * *." The effect of this statutory scheme is to permit the landowner to establish the appropriate amount of just compensation for a partial taking by any rational method so long as he is able to introduce competent evidence to that end.

■ The application of these concepts requires us to reverse the Judgment and Order in this case. In considering the validity of instructions to a jury, we must determine whether the instructions, taken as a whole, adequately advise the jury of the applicable law. *Banks v. Crowner*, 694 P.2d 101 (Wyo.1985). Proper instructions should be clear declarations of the pertinent law. *Short v. Spring Creek Ranch, Inc.*, 731 P.2d 1195 (Wyo.1987). The ruling of a trial court on an instruction will not constitute reversible error unless there is a showing of prejudice, which connotes a demonstration by the complaining party that the instruction misled or confused the jury with respect to the applicable principles of law. *DeJulio v. Foster*, 715 P.2d 182 (Wyo.1986). In relying upon the concepts articulated in *Coronado*, 642 P.2d 423, the trial court failed to afford adequate instruction to the jury on the proper factors to consider in awarding just compensation. Its reliance upon that case excluded the application of the Act. The two instructions offered by the Kelloggs and L.U. Sheep Company that the trial court refused to give encompassed correct statements of the law applicable in this case.

This brings us to rulings that the trial court made with respect to the motions relating to the admissibility of certain evidence. Even though we reverse for other reasons, it is appropriate to consider these rulings because of the likelihood that they will arise in connection with a new trial. The Kelloggs and L.U. Sheep Company raised the validity of these rulings in their fourth and fifth issues.

■ The fourth issue addresses the ruling of the district court that it would not receive the report of the appraisers into evidence. The Kelloggs and L.U. Sheep Company contend that this ruling was premised on an erroneous ground by the trial court. In our judgment, this ruling was correct, however, for at least three reasons. First, § 1–26–711, W.S.1977, sets forth the rules relating to the taking of a leasehold interest and makes no reference to compensation to the landowner, but the appraisers included compensation for loss of lease revenues in their report. Second, the clear implication of one of the holdings of the court in *Coronado*, 642 P.2d 423, is that compensation does not include any factor for loss of business, and the appraisers' report included a loss of business factor in the form of lease revenues. Third, the involvement of appraisers pursuant to Rule 71.1, W.R.C.P., in effect, constitutes a panel like a special master to advise the court, and the product of the appraisers' deliberations and consideration of just compensation should not be weighed in the balance of evidence at a jury trial which clearly is a determination *de novo* and not a review of the appraisers' recommendation.

■ What we have said with respect to the admissibility of the appraisers' report also serves to control the rental value of the road. In our judgment, rental value of the land taken is the substantial equivalent of the loss of business foreclosed by *Coronado*, 642 P.2d 423, and that rule has not been adjusted by the Act. To the contrary, the specific provisions of the statute, § 1–26–711, W.S.1977, relating to the taking of a leasehold interest do not provide for compensation to the landowner.

The admission of evidence is controlled generally by Rules 401, 402, and 403, W.R.E.[8] Rulings on the admission of evidence are within the sound discretion of the trial court and, in the absence of a clear abuse of discretion, its rulings will not be disturbed. *Taylor v. State*, 642 P.2d 1294 (Wyo.1982). This exercise of the sound discretion of the trial court includes its determinations with respect to adequacy of foundation, the relevance of the proffered evidence, the competency of the proffered evidence, the materiality of the proffered evidence, and its remoteness, and the court's ruling with respect to any factor will be upheld on appeal absent the clear abuse of that discretion.

Because of our reversal of this case, which will encompass a remand for a new trial, the question of admissibility of certain of this evidence does arise anew. The report of the appraisers and evidence as to the rental value of the road is not relevant with respect to the question of fair compensation under Art. 7 of the Act. Section 1–26–706, W.S.1977, however, clearly provides for the inclusion of the factors of impairment of use of the landowner's other property and the increase in damage to his property by the general public which could reasonably be expected to occur as a result of the condemnation. The evidence of the effects of the road becoming public that was offered through the testimony of the landowners is relevant so long as it does not encompass mere speculation in violation of the concept set forth in *Coronado*, 642 P.2d 423. In our judgment, the taking of a private road encompasses the immediate removal of the road, which is an improvement within the contemplation of § 1–26–709(b), W.S.1977. Consequently, evidence of road construction costs may well be relevant as to its market value. In this regard, we emphasize that the trial court retains its discretion, and the other requirements for admissibility of evidence that also come within the discretion of the trial court may still be applicable.

We cannot discern any relevance attaching to the evidence of the involvement of the USFS in this project. A similar question has been presented to this court before. In that instance, we stated:

"Defendants argue that they should have been allowed to adduce testimony tending to show that the Federal Government rather than the State of Wyoming was paying the bill. * * * Apparently the idea underlying the request was that juries regard Federal projects as pork barrels which may be tapped without pain to the conscience or injury, to the residents of the State. Our experience is that the citizens who serve on juries are fully cognizant of the harm to State taxpayers which results from unwarranted Federal spending. In any event, the argument is without merit, and no authorities are cited to warrant consideration of the point." *Barber v. State Highway Commission*, 80 Wyo. 340, 342 P.2d 723, 725–26 (1959).

That concept is as applicable now as it was then and, consequently, we uphold the ruling of the trial court with respect to the evidence of the involvement of the USFS in the project.

We turn then to the contention by the Kelloggs and L.U. Sheep Company that the arrangement between Hot Springs County and the USFS transgressed the Constitution of the State of Wyoming or its statutes. The Brief of Appellants/Defendants directs us to Wyo. Const. art. 3, § 37, which provides:

"The legislature shall not delegate to any special commissioner, private corporation

---

**8.** Rule 401, W.R.E., states:

" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

Rule 402, W.R.E., states:

"All relevant evidence is admissible, except as otherwise provided ·by statute, by these rules, or by other rules prescribed by the Supreme Court. Evidence which is not relevant is not admissible."

Rule 403, W.R.E., states:

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

or association, any power to make, supervise or interfere with any municipal improvements, moneys, property or effects, whether held in trust or otherwise, to levy taxes, or to perform any municipal functions whatever."

In our judgment, this section has no applicability to the issues presented in this case. Neither Hot Springs County nor the USFS is a "special commissioner, private corporation or association." E.g. *Lund v. Schrader*, 492 P.2d 202 (Wyo.1971). Furthermore, the property taken really had nothing to do with any municipal property or function. We are not referred to any other provisions of our Constitution to support the argument of appellants and, thus, we conclude that there is no constitutional infirmity in the arrangement between Hot Springs County and the USFS.

Neither are we persuaded of any statutory violation. Section 16–1–101, W.S.1977, upon which the Kelloggs and L.U. Sheep Company rely, states, in pertinent part:

"In exercising, performing or carrying out any power, privilege, authority, duty or function legally vested in any one (1) or more of them by Wyoming law, the state of Wyoming, and any (1) or more of its counties, * * * agencies, * * * [and] commissions * * * may cooperate * * * with like entities or authorities of * * * the United States. Cooperation may be informal or subject to resolution, ordinance or other appropriate action, and may be embodied in a written agreement specifying purposes, duration, means of financing, methods of operations, termination, acquisition and disposition of property, employment of executive and subordinate agents and other appropriate provisions."

It is true that a county has only the power expressly granted by statute or reasonably implied from other powers that are granted. *Haddenham v. Board of County Commissioners of Carbon County*, 679 P.2d 429 (Wyo.1984). Still, the legislature can delegate a part of its powers to both cities and counties for the exercise of governmental functions. *Carter v. Board of*

*County Commissioners of Laramie County*, 518 P.2d 142 (Wyo.1974). The legislature has expressly ceded to counties the power to acquire property through eminent domain and, furthermore, it has afforded to counties the authority to cooperate with an agency of the United States in carrying out this power. Section 16–1–101, W.S.1977. In making its agreement with the USFS, it is clear that Hot Springs County did not go beyond its delegated powers.

The Kelloggs and L.U. Sheep Company contend that it was improper for the court to permit Hot Springs County to proceed under the Act instead of the provisions of the statutes which relate to the establishment of county roads. Sections 24–3–101 to –127, W.S.1977. It is to be recalled that the parties stipulated that Hot Springs County had the right to condemn the road under the Act. General authority teaches, however, that a stipulation between the parties as to the correct law of the case is not binding upon the court. *Cf. Aetna Casualty & Surety Company v. Langdon*, 624 P.2d 240 (Wyo.1981). See cases cited in 83 C.J.S. *Stipulations* § 10.e. (1953). For that reason, we will consider this issue on its merits.

The Kelloggs and L.U. Sheep Company argue that the more specific statutes, which they perceive to be Sections 24–3–101 to –127, W.S.1977, should have been invoked rather than the general statute, which they describe as the Act. It is true that a specific statute will govern over a general statute enacted on the same subject, but this is a rule of statutory construction that is invoked only for the purpose of determining legislative intent. *Griego v. State*, 761 P.2d 973 (Wyo.1988). We discern nothing in the statutes relating to the establishment of a county road, §§ 24–3–101 to –127, that demonstrates a legislative intent concerning the Act that is any different from that which we already have articulated. Furthermore, in the first case of *Coronado*, 603 P.2d 406, we held that, insofar as condemnation is concerned, there is no statutory declaration that any remedy is exclusive. We do not find any statutory declaration of an exclusive remedy that has

been adopted subsequent to that decision. Pursuing this case under the Act was appropriate and permissible.

We turn then to the claim of error arising out of the refusal of the trial court to require the USFS to be joined as an indispensable party pursuant to Rule 19, W.R.C.P. Earlier, we commented upon the irrelevance of evidence about the involvement of the USFS in this project. The only possible reason that the USFS could be joined as an indispensable party is if "in [its] absence complete relief cannot be accorded among those already parties." Rule 19(a), W.R.C.P. The sole issue to be tried in this case was the amount of just compensation to the Kelloggs and L.U. Sheep Company for the taking of their property. The determination of that issue affords complete relief between Hot Springs County and the landowners, and the fact that the USFS may have some financial interest in the outcome of the case does not serve to make it an indispensable party. *Rochester Methodist Hospital v. Travelers Insurance Company*, 728 F.2d 1006 (8th Cir.1984); *Venuti v. Riordan*, 702 F.2d 6 (1st Cir.1983). Consequently, the trial court did not err in this regard.

Hot Springs County took no appeal from the judgment in this case. For that reason, we normally would not consider its assertion of the sufficiency of the evidence. In any event, our judgment that the case should be reversed and remanded for a new trial makes any consideration of the sufficiency of the evidence in this instance superfluous. We simply need not discuss it.

The district court did not instruct the jury properly with respect to the measure of just compensation for a partial taking pursuant to the Act. An application of the proper measure of just compensation demands that the trial court reconsider some of its rulings with respect to evidentiary matters. We hold that the trial court correctly ruled that the USFS is not an indispensable party in this action, and that any evidence with respect to its involvement in the road project is irrelevant and, for that reason, not admissible. The cooperation of Hot Springs County with USFS does not infringe upon any constitutional or statutory requirement, and it was appropriate to permit this action to proceed under the Act.

The Judgment and Order of the district court is reversed, and the case is remanded for a new trial. Except for those aspects of the trial court's determinations that have been affirmed, the new trial should be conducted in a manner consistent with this opinion.