H. Douglas MILLER, et al.,
Appellants (Plaintiffs),

v.

CAMPBELL COUNTY, Wyoming; Board of County Commissioners of the County of Campbell; Bill Barkley, Thomas Ostlund, and Mickey Wagensen; Campbell County Sheriff's Department, Campbell County Health Department; Campbell County Engineer's Office; Campbell County Fire Board; and Campbell County Emergency Services Agency, Appellees (Defendants).

No. 92–117.

Supreme Court of Wyoming.

June 9, 1993.

---

Blair J. Trautwein and Rick A. Thompson of Hathaway, Speight, Kunz and Trautwein, Cheyenne, for appellees.

Before MACY, C.J., and THOMAS, CARDINE, URBIGKIT * and GOLDEN, JJ.

GOLDEN, Justice.

Douglas Miller and other residents (appellants) of Rawhide Village subdivision in Campbell County appeal a partial summary judgment granted Campbell County and its officials (appellees) denying appellants' claim of emotional damages arising from an inverse condemnation action.

We affirm.

### ISSUES

1. [Whether] plaintiffs are entitled to emotional distress damages in an inverse condemnation case.

2. [Whether] the policies warranting awarding emotional damages in a tort action for private intrusion on property interests also warrant awarding emotional damages in an inverse condemnation action based on governmental intrusion on private property interests.

3. [Whether] the Appellants have been deprived of just compensation for the condemnation of their home, as guaranteed by Art. I § 33 of the Wyoming Constitution, if Appellants are denied recovery for emotional distress damages.

Appellees frame the issues as follows:

1. [Whether] emotional distress [is] a proper element of damages in an inverse condemnation case.

2. [Whether] public policy favors changing the law to allow emotional damages in an inverse condemnation case.

3. [Whether] the circumstances of this case justify the expansion of the definition of "just compensation" to include emotional distress damages.

### FACTS

Appellants were residents of the Rawhide Village subdivision located in

Gary L. Shockey and Heather Noble of Spence, Moriarity & Schuster, Jackson, for appellants.

* Retired January 1, 1993

Campbell County near Gillette, Wyoming. The subdivision is located adjacent to a large open-pit coal mine, owned and operated by Amax Coal Company.

Located north of the Little Rawhide Creek, the Rawhide Village subdivision was developed in 1975 and originally approved and authorized by actions of the Campbell County Commissioners. Some area ranchers had, at times, observed gas bubbling from the creek, and during the development of the subdivision appellants claim that core samplings taken from the ground showed the presence of methane gas near the surface of the subdivision. At approximately the same time that the Rawhide Village subdivision was being developed, Amax Coal Company was developing the Eagle Butte coal mine just to the east of and adjacent to the subdivision. The County was aware of the development of the adjacent coal mine when the subdivision was approved.

In February, 1987, dangerous gases began seeping from the ground and cracks in the street in the southern end of the subdivision. Campbell County Commissioners (commissioners) consulted with state and federal agencies concerning health and safety problems posed by the gas seepage. The County hired private consultants to conduct drilling and testing of the gas concentration levels, confirming the seepage of methane and hydrogen sulfide gases from coal seams beneath the subdivision.

Concerned about the health and safety of the residents, the commissioners recommended that some homes in the subdivision be evacuated on February 24, 1987. The following day, the county declared an emergency and evacuated more homes. The county continued to monitor and test the seepage to assess the potential hazards to the remaining residents and evacuated still more homes on March 6. On March 26, some homeowners were allowed to return to their homes, upon the condition they install gas detectors. The county agreed to provide financial assistance to some of those who chose not to return and provided gas detectors for others.

By the end of May, several residents complained of medical problems and illnesses, including two confirmed cases of hydrogen sulfide poisoning. On June 8, 1987, county health officials petitioned Governor Sullivan to declare the subdivision a disaster area because of specific health problems within Rawhide Village. On May 29, in an emergency meeting, the county declared the entire subdivision uninhabitable.

On June 2, the county passed a resolution requiring that the entire subdivision be evacuated by July 31, providing temporary assistance to residents in the form of alternate shelter until June 30. The commissioners ordered the evacuation, believing that federal assistance money from the Federal Emergency Management Agency (FEMA) would become available.

On June 9, Governor Sullivan issued a proclamation declaring the subdivision a disaster area. The State Emergency Operations plan was activated to provide state assistance to Rawhide Village residents, and on June 12, Governor Sullivan applied for FEMA assistance.

When the initial request for federal aid was made, FEMA conducted an extensive investigation of Rawhide Village. At the request of the state health officer, the Center for Disease Control (CDC) also conducted an investigation. Relying on the investigation by CDC, FEMA found that "essentially, CDC concluded that a significant health and safety hazard does not currently exist.... Most of the subdivision is habitable at this time.... a major-disaster declaration under the Disaster Relief Act, PL 93–288, is not warranted." The Assistant Surgeon General concluded that the available data indicated that a limited fire and explosion potential exists in only a small cluster of homes within the subdivision. On June 25, FEMA denied Campbell County's request for federal relief.

On July 3, the county suspended the July 31 evacuation deadline, but ordered the immediate, temporary evacuation of the subdivision so that more drilling and testing could be conducted to obtain sufficient data to support an appeal of the FEMA decision. The county left intact the resolution declar-

ing the entire subdivision uninhabitable, and enforced this resolution by arresting Douglas Miller on July 7 for bypassing a roadblock to retrieve his children's clothing and tools of his trade. On July 28, the county rescinded the evacuation order, three days before the July 31 deadline. At this time only eight residents remained. Other residents had abandoned their homes based on the June 2 evacuation order and, as a result, gave either a deed in lieu of foreclosure to mortgage holders or had their mortgages foreclosed. CDC continued testing and monitoring the gas levels within some homes in the subdivision but found no additional health hazards.

On September 4, President Reagan declared the subdivision a disaster area, overruling the FEMA denial for relief. Rawhide Village residents received federal relief aid and were also granted $2,000,000 from the Abandoned Mine Reclamation Fund.

Four lawsuits ensued from these incidents. In the first suit Rawhide Village residents, comprising eighty-eight families, sued Amax Coal Company in September, 1987. Plaintiffs sued on negligence theories claiming that Amax's dewatering of underground structures at the Eagle Butte Mine had caused the gas seepage. On April 26, 1989, the suit was settled for an undisclosed amount. On July 7, 1988, Douglas Miller brought suit against Campbell County and its commissioners, alleging that the evacuation order deprived him of his constitutional rights, including deprivation of property and liberty rights without due process. The claim regarding the liberty interest arose from his arrest on July 7, 1987. On October 2, 1989, the court granted defendants' motion for summary judgment, finding that the defendants did not deprive Miller of any constitutional rights.

On May 26, 1989, approximately eighty families, who are now appellants in the case at bar, filed suit in federal district court against Campbell County and its officials. *See Miller v. Campbell County, Wyo.*, 722 F.Supp. 687 (D.Wyo.1989). Appellants claimed a violation of 42 U.S.C.

§ 1983, alleging that the county and its commissioners had deprived them of their constitutional rights, including deprivation of property and liberty interests without due process of law as well as a deprivation of their Fourteenth Amendment substantive due process rights. Appellants alleged, more specifically, that the county took their property without just compensation. On November 7, 1989, Federal Judge Alan B. Johnson granted summary judgment on all counts in favor of defendants. With regard to the unjust compensation claim, the federal district court held that it lacked subject matter jurisdiction because the claim was not "ripe." Judge Johnson stated, "A taking claim under the fifth amendment is not ripe until the plaintiff has received a final determination from the agency responsible for an alleged regulatory taking and has sought compensation through state procedures." The appellants would have to file an inverse condemnation action and then be denied just compensation before the federal district court would have subject matter jurisdiction.

On September 24, 1991, the Tenth Circuit Court of Appeals affirmed the federal district court, holding that appellants had an adequate remedy under state law with the inverse condemnation action. *Miller v. Campbell County*, 945 F.2d 348 (10th Cir. 1991).

Pursuant to the federal order, appellants filed an inverse condemnation claim in state district court on November 6, 1989. Appellants asserted claims for inverse condemnation, denial of substantive due process, and unlawful authorization of the subdivision, requesting the following damages:

a) Loss of value and use of property, including loss of all payments on property, loss of value of improvements to property, additional costs, expenses, interest, and other amounts to obtain new housing, and diminished value of replacement housing.

b) Emotional distress and consequential physical distress as a consequence of loss of property.

c) Emotional distress and consequential physical distress as a consequence of the denial of substantive due process and fairness.

d) Costs of this action, including reasonable attorneys' fees.

On January 28, 1991, appellants moved for partial summary judgment on the inverse condemnation claim, asserting entitlement to damages, which, as far as the record reflects, has not yet been decided. On July 10, 1991, appellees filed a motion for partial summary judgment for emotional distress damages as a consequence of loss of property, and emotional and physical distress damages as a result of the denial of substantive due process.

On May 11, 1992, the district court granted Campbell County's motion for partial summary judgment on all nonproperty damage claims. The district court held that it was not aware of any authority permitting the recovery of damages for emotional distress as a result of inverse condemnation, and that damages in such actions are limited to the value of the property or to those damages which have some effect on the value of the property. Appellants now appeal this order denying their claim for emotional distress damages as a result of an inverse condemnation.

## STANDARD OF REVIEW

■ We repeat our standard of review for summary judgment:

When reviewing the propriety of a summary judgment, this court examines the record from the vantage point most favorable to the party opposing summary judgment to determine whether there exists a genuine issue of material fact to preclude disposition of the case as a matter of law. A genuine issue of material fact exists when a disputed fact, if proved, would have the effect of establishing or refuting an essential element to the cause of action or defense asserted by the parties. If upon such review no genuine issue of material fact is found to exist, we will uphold a summary judgment under any legal theory properly supported by the record.

*Abell v. Dewey,* 847 P.2d 36, 38–39 (Wyo. 1993) (quoting *Equality Bank of Evansville, WY v. Suomi,* 836 P.2d 325, 328 (Wyo.1992)) (citation omitted).

## DISCUSSION

Appellants assert that the issue of whether they are entitled to emotional distress damages in an inverse condemnation action is an issue of first impression for this court. In supporting this contention, appellants discuss the policies advocating emotional distress damages in inverse condemnation cases and the historical importance of the protection of private property in American society. Appellants point out the strong protection afforded private property under tort law, particularly the allowance of emotional distress damages when private property rights are tortiously invaded. Appellants attempt to parallel this legal theory to the law of takings, arguing emotional distress is a proper element of damages in condemnation actions.

■ We disagree that this is an issue of first impression. This court has repeatedly articulated the nature and measure of damages in condemnation cases, which includes inverse condemnation cases. *See State Hwy. Comm'n v. Scrivner,* 641 P.2d 735 (Wyo.1982); *L.U. Sheep Co. v. Bd. of County Comm'rs,* 790 P.2d 663 (Wyo. 1990); *Coronado Oil Co. v. Grieves,* 642 P.2d 423 (Wyo.1982); *Wyoming State Hwy. Dep't v. Napolitano,* 578 P.2d 1342 (Wyo.1978); *Sheridan Drive–In Theatre, Inc. v. State,* 384 P.2d 597 (Wyo.1963); *Morrison v. Cottonwood Dev. Co.,* 38 Wyo. 190, 266 P. 117 (1928). The issue of this appeal is limited to whether or not emotional distress is a proper element of damages in an inverse condemnation case, and whether appellants will be justly compensated if those damages are not allowed.

Appellants seek just compensation for inverse condemnation of their homes based on the Wyoming Constitution: "Private property shall not be taken or damaged for public or private use without just compensation." Wyo. Const. art 1, § 33. The

statute pertaining to inverse condemnation provides:

> When a person possessed in the power of condemnation takes possession of or damages land in which he has no interest, or substantially diminishes the use or value of land, due to activities on adjoining land without the authorization of the owner of the land or before filing an action of condemnation, the owner of the land may file an action in district court seeking damages for the taking or damage and shall be granted litigation expenses if damages are awarded to the owner.

WYO.STAT. § 1–26–516 (1988).

■ This statute is part of the Wyoming Eminent Domain Act, WYO.STAT. § 1–26–501, *et seq.* (1988). In drafting this act the legislature looked to eminent domain law in California, CAL.CIV.PROC.CODE §§ 1230.010–1273.050 (West 1982) and the UNIFORM EMINENT DOMAIN CODE, 13 U.L.A. 1 (1986). The UNIFORM EMINENT DOMAIN CODE does not pertain to inverse condemnation, nor does the California Civil Procedure Code have a separate inverse condemnation clause. But the provisions pertaining to compensation in both are virtually identical to parallel provisions in the Wyoming Eminent Domain Act. *See* UNIFORM EMINENT DOMAIN CODE §§ 1001–16 and CAL.CIV.PROC.CODE §§ 1230.010–1273.050. Article 7 of the Wyoming Eminent Domain Act, dealing with compensation, was derived mostly from the UNIFORM EMINENT DOMAIN CODE §§ 1001–16. However, Wyoming's Eminent Domain Act included inverse condemnation, and the legislature intended that the rest of the act apply to inverse condemnation actions, including damages and compensation. *See* *L.U. Sheep,* 790 P.2d at 671.

The Wyoming Eminent Domain Act, COMPENSATION STANDARDS, provides that "[a]n owner of property is entitled to compensation determined under the standards prescribed by W.S.Stat. § 1–26–702 through 1–26–713." WYO.STAT. § 1–26–701(a) (1988). The COMPENSATION FOR TAKING section provides the measure of compensation that is "just" in any condemnation proceeding, stating "The measure of compensation for a taking of property is its *fair market value* * * *." WYO.STAT. § 1–26–702(a) (emphasis added).

This court first interpreted the Wyoming Eminent Domain Act in *L.U. Sheep.* We held that the act covers the entire subject of eminent domain and that the legislature abrogated any contrary common law at that time. *L.U. Sheep,* 790 P.2d at 669. We further held that the legislature intended the act to be strictly construed in favor of landowners "to the end that no person shall be deprived of the use and enjoyment of his property except by a valid exercise of that power." *L.U. Sheep,* 790 P.2d at 671 (quoting *Coronado* ).

The district court's disposition relied on *Coronado,* the leading Wyoming case in determining the proper measure of damages for a taking. In that case, Coronado Oil sought to condemn private property to obtain a way of necessity to provide access for exploration and development of federal oil and gas leases. This court held that claims for personal inconvenience, mental anguish, discomfort, and annoyance are not compensable under the takings clause (Wyo. Const. art. 1, § 33), unless these results are causative factors in the depreciation of the value of the land. *Coronado,* 642 P.2d at 439. Depreciation in value of the land must be by reason of damage to the *land itself* or to property rights therein. *Coronado* at 432.

This court has held many times that damages other than to the property itself is not compensable. *See: Scrivner,* 641 P.2d at 739 ("Compensation for owner's personal loss is not allowable." *Also,* "Loss of business is not compensable in condemnation case."); *Coronado,* 642 P.2d at 439 (Personal inconvenience, mental anguish, discomfort and annoyance are not compensable.); *Napolitano,* 578 P.2d at 1346–47 ("Personal inconvenience or discomfort to the owner, or interference with the business conducted on the land, is not compensable *unless such results are causative factors on the depreciation in the value of land.* "); *Sheridan Drive–In,* 384 P.2d at 599 ("A mere personal inconvenience or injury, such as damage to a business, is not

sufficient."); *Morrison,* 38 Wyo. at 206, 266 P. at 123 ("[i]njury to a business conducted upon lands taken under the right of eminent domain had been generally held by courts not to constitute an element of just compensation unless a statute expressly allowed it.").

■ It is clear that the Wyoming Eminent Domain Act and prior case law require that the landowner be justly compensated and that the proper measure of compensation is the fair market value of the property taken and any damages that diminish the value of the land. *Scrivner,* 641 P.2d at 738. *"Just compensation is the fair market value of property taken."* *L.U. Sheep,* 790 P.2d at 670. (emphasis added). *See also Energy Transp. Systems, Inc. v. Mackey,* 650 P.2d 1152, 1154, 1156 (Wyo.1982). In our review of cases, nowhere do we find personal loss, particularly recovery for emotional distress, allowed in condemnation actions.

The Rawhide Village subdivision residents contend that these cases are distinguishable because the claims involved business property, not homes. The Wyoming Eminent Domain Act makes no distinction between businesses and homes; it simply states that no private property may be taken. Wyo. Const. art. 1, § 33. Private property includes both private business and private homes. When defining the subjects of the act, the Wyoming legislature made no distinction between business owners and homeowners. WYO.STAT. § 1–26–502(a)(ii), (1988), defines a condemnee as "a person who has or claims an interest in property that is the subject of a prospective or pending condemnation action." If the legislature had intended to allow different damages for a taking of a person's home or business, it could have said so. The same is true of the drafters of the Wyoming Constitution.

Appellants cite only tort law in arguing that emotional distress damages is allowable when there is an interference with property rights. These particular tort cases involve claims of negligent infliction of emotional distress, intentional infliction of emotional distress or emotional damages

arising from tortious conduct in negligence. None were condemnation actions.

Appellants cite an Oregon case where the court held that "damages for mental anguish are recoverable in a *negligence* action when they are the result of ... interference with the use and enjoyment of ... land." *Edwards v. Talent Irrigation Dist.,* 280 Or. 307, 570 P.2d 1169, 1170 (1977) (emphasis added). This court has, however, stated the applicable rule in condemnation actions: "Recovery of damages for negligence may not be had in a condemnation action." *Coronado,* 642 P.2d at 438. The analogy to tort law used by appellants is clearly not applicable in this case.

Nothing in the record indicates that appellants' alleged emotional distress was a causative factor in the depreciation of the value of their land or their homes. The Rawhide Village residents would be justly compensated if they received the fair market value of their homes and any damages that diminished their value of them, such as physical injury to property caused by gas seepage. Emotional distress is not a proper element of damages in an inverse condemnation action.

Appellants argue that public policy favors allowing emotional damages in condemnation actions. Campbell County argues that allowing emotional distress damages in condemnation cases would not benefit the public and may result in poor decision-making by government officials.

Government cannot anticipate or budget for emotional distress damages as a result of inverse condemnation and, consequently, may be reluctant to act in emergency situations for fear that it could not afford to compensate any emotional distress claims caused by the government's action. We agree that this may result in poor decision-making. Public policy may favor allowing emotional distress damages in tort cases. However, the law and policies behind eminent domain are separate and distinct from those involving torts.

The circumstances of this case, despite what appellants would have us believe, do not warrant the allowance of emotional distress damages. The commissioners were

faced with an emergency of immense proportions. Poisonous gases were seeping into Rawhide Village subdivision and into the residents' homes. In an attempt to protect the health of the residents the county removed these families from this dangerous situation. The commissioners believed that federal relief would be available to appellants if they evacuated the Rawhide Village subdivision. Although federal relief was not available until September 4, 1987, state money was. As a result of the commissioners' actions, the residents received money from the state, the Abandoned Mine Reclamation Fund and, eventually, the federal government. Regardless of the confusion that ensued during this time, the commissioners were acting in good faith to protect the residents of the Rawhide Village subdivision.

Of the eighty-eight families who filed suit against the county, the record reflects only three claims of emotional distress. One woman's claim of emotional distress may have been the result of her child's death in the year previous to these incidents. Appellants have not even claimed that their emotional distress was caused by the risk of physical injury as a result of the noxious gases, an obvious claim for emotional distress in tort law.

Appellants also argue that if they are not awarded emotional distress damages that they will not be "justly compensated." Appellants received money from the state and federal governments. The county provided rent assistance, and appellants received $2,000,000 from the Abandoned Mine Reclamation Fund. Amax Coal Company has paid appellants an undisclosed amount. Regardless, as the Wyoming Eminent Domain Act provides, if appellants are awarded the fair market value of their homes, they will be justly compensated.

A review of the record from a vantage point most favorable to appellants fails to disclose any genuine issue of material fact to allow emotional distress damages in an inverse condemnation action. Nothing can preclude the disposition of this case as a matter of law. Appellants contend that emotional distress damages are, or should be, recoverable in an inverse condemnation action, but we find no authority to support this contention.

We agree with Campbell County and its officials that the facts of this case do not warrant expanding inverse condemnation damages to include emotional distress. Emotional distress is not a proper element of damages in an inverse condemnation action under the Wyoming Eminent Domain Act. We see no reason why the damages in condemnation cases should be expanded to include emotional distress in this or any condemnation action.

## DISPOSITION

We affirm the district court's grant of partial summary judgment in favor of Campbell County on the Rawhide Village residents' claim for emotional distress damages in this inverse condemnation action.

Affirmed.

URBIGKIT, J., Retired, dissents.