**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 30 1998**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

NORTH FINN, a partnership,

      Plaintiff-Appellee-
      Cross-Appellant,

v.

D.L. COOK,

      Defendant-Appellant-
      Cross-Appellee.

Nos. 97-8112
&
97-8115
(D.C. No. 92-CV-165-B)
(D. Wyo.)

**ORDER AND JUDGMENT** *

Before **BALDOCK, EBEL,** and **MURPHY** , Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously to grant the parties' request for a decision on the briefs without oral

argument.  See Fed. R. App. P. 34(f) and 10th Cir. R. 34.1.9.  The cases are

therefore ordered submitted without oral argument.

---

*     This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel.  The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

In this protracted oil and gas litigation, defendant D. L. Cook appeals the district court's order adopting an expert witness' accounting which defines the amounts due between the parties. Plaintiff North Finn appeals from the accounting as well, but has represented that it will accept the accounting as final if this court decides to deny defendant's appeal. Because any error in adopting the accounting without allowing Cook the opportunity to cross-examine the expert was harmless, we affirm the judgment.

North Finn is the operator of the Carson Muddy Sand Unit in Campbell County, Wyoming, an oil recovery unit that includes land leased by Cook from the federal government. Cook has working and royalty ownership interests in the Unit. In 1989, Cook farmed out an adjacent federal leasehold to Kelly, who drilled two wells on the border of the Unit (referred to as the Kelly No. 1-7 and Kelly No. 2-7 wells). Tests showed that the Kelly wells were draining from the same reservoir as that being pumped by the Unit.

On October 31, 1991, North Finn, acting for the Unit participants, purchased the Kelly wells in a Sheriff's sale. Cook thereafter claimed working ownership interests and overriding royalty interests in the Kelly wells. When North Finn sought to join the wells into the Unit, Cook objected, and the issue was submitted to the Wyoming Oil and Gas Commission. The Commission upheld joinder of the wells as of September 1993, and the Wyoming Supreme

Court affirmed.  See Cook v. Wyoming Oil & Gas Conservation Comm'n, 880 P.2d 583 (Wyo. 1994).  Throughout this interim period, North Finn operated the wells and recorded the expenses it incurred.

In May 1992, North Finn brought a declaratory judgment action against Cook, seeking to define the parties' rights and liabilities regarding the Kelly wells.  Cook filed several counterclaims.  In May 1994, trial was had before the court.  During trial, North Finn presented testimony regarding the expenses of operating the Kelly wells.  Thereafter, Cook sought and received leave to amend its pleadings to include an additional counterclaim seeking an accounting of North Finn's operation of the Unit.  In November 1995, the parties entered into a stipulation determining many of the disputed issues of fact and agreeing to entry of partial judgment.  Pursuant to the stipulation, Cook was deemed to own (1) a 12.5 percent overriding royalty interest in the Kelly wells, which was not subject to costs and charges other than taxes; and (2) a 30 per cent working interest in the Kelly No. 1-7 well and a 100 percent working interest in the Kelly No. 2-7 well, which were subject to a proportionate share of operating expenses attributable to each well.  The stipulation called for North Finn to prepare an accounting regarding (1) its operation of the Kelly wells before they were joined into the Unit, and (2) its operation of the Unit from its date of inception, addressing the issues raised in Cook's counterclaims.

In December 1995, North Finn submitted its accounting, purporting to set out the revenues and expenses for each of the Kelly wells and for its operation of the Unit from its inception. See Supp. App. at 196-204. Cook objected to North Finn's submissions and filed a motion to strike the accounting and to require a more definite and certain accounting. In November 1996, the court held a hearing regarding the appointment of an outside expert witness to complete the accounting.

In December 1996, North Finn submitted a supplement to its accounting, with invoice breakdowns for the two wells and copies of invoices. This accounting concluded that Cook owed North Finn $30,235.01, after taking account of Cook's unit revenues, expenses, and overriding royalty interests, and his individual revenues, expenses and royalties for the Kelly wells. See Appellant's App. at 74-86; Supp. App. at 223-51. Thereafter, accountant Michl McGee was appointed by the court to render an accounting in the case.

McGee submitted his accounting in August 1997. Although he accepted fully North Finn's accounting of the revenues, expenses, and royalties for Cook's interests in the Unit before the Kelly wells were purchased, he questioned many of the operating and legal expenses charged after the wells were acquired but before they were joined into the Unit in September 1993. McGee concluded that if the disputed operating and legal expenses were disallowed, Cook would owe

North Finn $5,372.82. North Finn filed a motion for an order confirming the accounting, but requested the court to reinstate the operating and legal expenses questioned by McGee. Cook filed objections to this motion, arguing that North Finn was not entitled to the deducted expenses, and noting the need for a hearing.

On October 3, 1997, the district court entered an order confirming McGee's report and adjudging North Finn entitled to $5,372.82 from Cook. The court rejected both North Finn's argument that it was entitled to the disputed legal and operating expenses, and Cook's arguments that the accounting was not sufficiently complete and that additional issues remained for determination. Noting that McGee had, as an independent expert, examined the record and documentation thoroughly, the court found upon reviewing the report that it was "an accurate determination of the rights and liabilities of the parties to this action." Appellant's App. at 129. Cook moved for withdrawal of the order on the grounds that he should have been permitted to cross-examine McGee, and that McGee did not analyze North Finn's accounting of its operation of the Unit from its inception, including the issues raised in Cook's counterclaims, as was required by the stipulated judgment. The district court denied the motion.

On appeal, Cook argues that the district court erred in adopting McGee's findings without a plenary hearing, that such a procedure transformed McGee into the final decision maker, and that the district court erred in failing to make

separate findings of fact and law, as required by Federal Rule of Civil Procedure 52(a). We review the district court's legal rulings de novo, but defer to its factual findings unless they are clearly erroneous. See Pierce v. Underwood, 487 U.S. 552, 558 (1988).

The district court appointed McGee pursuant to Federal Rule of Evidence 706. That rule entitles the parties to cross-examine court-appointed experts. Therefore, we agree the district court erred in restricting Cook's right to cross-examine McGee before adopting the accounting. Given the procedural posture of this case, however, we conclude that the error was harmless. Federal Rule of Civil Procedure 61 provides

> No error in . . . the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court . . . is ground for . . . disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

Here, the district court had before it many years of evidence regarding North Finn's operation of the Unit and the revenues and expenses relating to the Kelly wells. Much of the testimony in the May 1994 trial concerned these subjects. The stipulated judgment set out each of the parties' working interests in the wells and Cook's overriding royalty interests. The record also included the Unit operating agreement, with provisions pertaining to the assessment of operating

expenses, detailed invoices evidencing expenses incurred in operating the Kelly

wells between their purchase on October 31, 1991, and their inclusion in the Unit

in September 1993, and North Finn's revenue/expense reports. McGee's

accounting included a detailed explanation of his methodology, assumptions, and

the evidence relied upon. Moreover, the district court had before it Cook's

objections both to North Finn's initial accounting and to McGee's report. This

backdrop provided the district court with more than enough information to

evaluate the accuracy of McGee's conclusions. See, e.g. In re Spillane, 884 F.2d

642, 646-47 (1st Cir. 1989) (holding that denial of cross-examination, if error,

was harmless, when court "had sufficient information reasonably to conclude that

all of the [disputed legal services] were compensable").

More importantly, Cook has not demonstrated how cross-examining McGee

would have changed the outcome of this case. He has not identified any

substantive errors in the accounting, merely suggesting that infirmities might be

uncovered during a hearing. In the absence of such a showing, Cook has not

demonstrated how the failure to allow cross-examination affected his substantial

rights. See, e.g., Texas-Capital Contractors, Inc. v. Abdnor, 933 F.2d 261, 270-71

(5th Cir. 1990) (noting significance of party's failure to identify factual errors

which would have been revealed by cross-examination in holding denial of such

cross-examination harmless); People of the State of Illinois v. Interstate

-7-

Commerce Comm'n , 722 F.2d 1341, 1350 (7th Cir. 1983) (holding denial of cross-examination harmless when party did not indicate how acceptance of its evidentiary arguments might reasonably have been expected to have led to a different result).

In addition, the district court did not abdicate its decision-making role by adopting McGee's accounting. McGee clearly indicated the bases upon which his report rested, and the legal issues yet to be decided by the court. The court decided these legal issues, concluding that the disputed operating and legal expenses should not be set off against Cook's revenues from the Kelly wells. The court also conducted an independent review of McGee's conclusions, adopting them only after concluding they were an accurate determination of the parties' rights and liabilities. Further, the court's adoption of the accountant's factual conclusions and its determination of the identified legal issues are sufficient to permit "meaningful review," and therefore satisfy the requirements of Fed. R. Civ. P. 52(a). See Wolfe ex rel. Joseph A. v. New Mexico Dep't of Human Servs. , 69 F.3d 1081, 1087 (10th Cir. 1995).

The judgment of the United States District Court for the District of Wyoming is AFFIRMED.

Entered for the Court


Bobby R. Baldock
Circuit Judge