MONTANA–DAKOTA UTILITIES CO., a Division of MDU Resources Group, Inc., Appellant (Petitioner),

v.

The PUBLIC SERVICE COMMISSION of the State of Wyoming, Bil Tucker, Chairman, John R. Smyth, and Stephen N. Ellenbecker, Commissioners, Appellees (Respondents).

No. 93–141.

Supreme Court of Wyoming.

May 12, 1994.

Bruce S. Asay, Cheyenne and Douglas W. Schultz, Montana–Dakota Utilities Co., Bismarck, ND, for appellant.

Joseph B. Meyer, Atty. Gen., Michael L. Hubbard, Sr. Asst. Atty. Gen., Kristin H. Lee, Asst. Atty. Gen., for appellees.

Before MACY, C.J., and THOMAS, CARDINE, GOLDEN and TAYLOR, JJ.

THOMAS, Justice.

At issue in this case is the effect of a partial reversal by this court of an order entered by the Public Service Commission of Wyoming (PSC) in a proceeding to adjust gas purchase prices. In *Montana Dakota Utilities Co. v. Pub. Serv. Comm'n of Wyoming*, 847 P.2d 978 (Wyo.1993) (*MDU I*), this court reversed an order of the PSC to the extent it adjusted the non-gas component of the rates charged by Montana–Dakota Utilities Co. (MDU), and it approved the portion of the order permitting an increase of rates due to the pass-on of wholesale gas rates. After remand, the PSC conducted further proceedings that still failed to include notice of, or a proper hearing on, the non-gas components of the rates charged by MDU. Despite our partial reversal, the PSC adopted a stance that it could not adjust retroactively the rates approved in the order it entered in the prior proceeding. The opinion of this court was not mysterious, and we have some difficulty relating to the interpretation of the opinion espoused by the PSC. The February 12, 1992 order, to the extent it was reversed, was void and of no effect and could not in any way adjust the non-gas component of the rates charged by MDU. We reverse the Findings, Conclusions and Order on Oral Argument Issues entered by the PSC on May 21, 1993, and the case is remanded to the PSC with instructions to maintain in effect the non-gas component of MDU rates existing prior to its order of February 12, 1992 and to permit MDU to impose a surcharge on its billings to recoup the amounts it was denied pursuant to the February 12, 1992 order.

In its Appellant's Brief, MDU articulated the following issues:

1. Are the Wyoming Public Service Commission's Findings, Conclusions and Order on Oral Argument issued May 21, 1993, arbitrary and capricious, unsupported by substantial evidence and unlawful?

2. Is Montana–Dakota Utilities Co. entitled to charge retail gas customer rates which reflect the increase in the gas cost element approved by the Wyoming Public Service Commission in its Final Order issued February 12, 1992 and the pre-February 12, 1992 level for the non-gas component?

3. Is Montana–Dakota Utilities Co. entitled to levy a surcharge upon its customers for amounts lawfully owed but not charged or collected due to the Wyoming Public Service Commission's illegal adjustment in its Final Order to the non-gas component of the utility's customer rates?

In its Brief of Appellees, the PSC chooses to articulate the issues in this way:

1. Did the Wyoming Public Service Commission act in accordance with Wyoming law when it denied a refund to appellant MDU?

2. Did the Wyoming Public Service Commission act in accordance with Wyoming law when it denied appellant's request to reinstate the non-gas component of the rate?

The PSC posture in this case is that, by precedent from this court, its treatment of the case upon remand was justified and lawful.

The complete factual background of this case is set forth in *MDU I.* For our purposes, the summary begins on August 29, 1991, when the PSC issued a notice and order setting a public hearing for October 29, 1991. The purpose of the noticed hearing was to address an application by MDU to increase its retail rate on gas purchased from Williston Basin Interstate Pipeline Company (WBI), its wholesale gas supplier. The Federal Energy Regulatory Commission (FERC) had authorized WBI to increase its wholesale gas rate, and MDU sought authorization to pass the increased cost of gas on to its retail consumers. A refund apportionment to MDU customers throughout the state was also heard at the same time, but that aspect of the case is not in issue. The notice of the hearing by PSC failed to apprise MDU that any adjustment in the non-gas component of MDU's charges to its customers would be considered at the hearing.

Following the notice, the PSC secretary sent a letter, dated September 4, 1991, to

MDU in which he stated his concern with possible over-earnings by MDU from its gas operations based on its last two annual reports. The secretary requested detailed information from MDU on both its gas and electric operation, the latter making up the non-gas component of the rate MDU charges its customers. This letter did not apprise MDU of the fact that the PSC intended to consider the non-gas component of its rate at the hearing scheduled for addressing the pass-on of MDU's increased wholesale gas costs.

The hearing was held on October 29, 1991, and the parties then submitted briefs. Thereafter, the PSC entered its order of February 12, 1992 in which, in addition to adjusting the refund apportionment, the PSC reduced the non-gas component of MDU's rates by $0.0972 per dekatherm, which was to correct what the PSC perceived to be over-earnings. Following a denial of a request for a rehearing by MDU, MDU took the appeal, which resulted in this court's decision in *MDU I*. The thrust of our holding in *MDU I* is that the PSC, by the notice it gave for the hearing, was entitled to adjust MDU rates only to accomplish the pass-on of the increase in the cost of gas. We held it would be possible for the PSC to encompass a general rate-making proceeding in connection with a pass-on gas proceeding, although we noted there would be an awkward delay by virtue of combining such issues. We held, however, unless the PSC furnished notice to the utility of its intention to consider the pass-on proceeding as a general rate-making proceeding, it could not so expand the nature of the proceedings. We held the notice given by the PSC to MDU in this case was not effective to expand the scope of the proceedings, and we reversed the PSC's adjustment of the non-gas portion of the customer rates.

The case was remanded to the PSC for further proceedings consistent with the court's opinion. Conceptually, that could include furnishing a notice of a general rate-making proceeding, but it was also clear the PSC needed to amend its order to delete the reduction of the non-gas component while entitling MDU to charge the rate justified by the increase in the cost of its gas. It is obvious a surcharge was required to make MDU whole because of the delay in permitting implementation of the increased rate.

After the case was remanded, the PSC ordered the parties to file briefs on any appropriate adjustment of the non-gas component of MDU's customer rates. On April 20, 1993, the PSC heard oral arguments, but did not receive any evidence relating to the non-gas component of the rates. It considered only the arguments of the parties and a stipulation that essentially was discounted in its order. The PSC then entered another order on May 21, 1993 in which it mandated the $0.0972 per dekatherm reduction in MDU's non-gas component rate be continued in effect until MDU produced substantial evidence in a general rate-making case that a greater rate was required. MDU was ordered to file a general rate-making case on or before July 1, 1993. MDU filed a petition for review of that order with the district court, and the district court then certified the case to this court.

What occurred on remand is interesting and even amazing. The PSC did not order any further evidentiary hearing nor was any hearing conducted; instead, it reviewed the matter upon oral arguments by attorneys for MDU and for the Intervenor Consumer Representative Staff. The PSC noted specifically it would consider whether the remand by this court changed the effect or the effective date of its adjustment of a non-gas component of MDU's rates and whether it must enter an order requiring MDU rates to be increased retroactively. The PSC ordered the request for a retroactive non-gas rate increase to recover lost revenue be denied. In support of that determination, the following findings by the PSC seemed pertinent:

2. To support its request for a revenue reimbursement surcharge "from the date the rates were improperly reduced," Montana–Dakota relies upon the Wyoming Supreme Court's final language in its Opinion:

Therefore we reverse PSC's action in adjusting the non-gas component. We remand for further proceeding consistent with this opinion.

3. Consumer Representative Staff argues, *inter alia*, that Wyoming utility law and Wyoming Supreme Court decisions prohibit the Commission from setting rates retroactively as sought by Montana–Dakota, relying upon the Wyoming Supreme Court decision in *MGTC, Inc. v. Public Service Commission of Wyoming, et al.,* 735 P.2d 103 (Wyo.1987), wherein the court stated in unequivocal language that this Commission is prohibited from retroactive ratemaking, *i.e.,*

> [T]he rule against retroactive ratemaking is a generally accepted principle of public utility law which recognizes the prospective nature of utility ratemaking and prohibits regulatory commissions from rolling back rates which have already been approved and have become final.

In its conclusions, the PSC incorporated the following:

3. In its Opinion, the Court emphasized that this Commission has only the power and authority granted by statute, and that such statutes and the Commission rules duly issued pursuant thereto must be strictly construed. This Commission does not have statutory authority, as sought by Montana–Dakota, to declare the current filed rates to be illegal or improper without a public hearing, or to increase Montana–Dakota's current effective rates retroactively.

\* \* \* \* \* \*

5. Montana–Dakota's current effective rates were set by the Commission in accordance with Wyoming statutes and court rulings, and are the lawful rates until changed by the Commission based on substantial evidence taken at the rate case public hearing to be set by the Commission in this case as ordered by the Court. The history of the rate setting is as follows:

(a) Pursuant to W.S. § 37–3–106 and Commission Rules Sections 41 and 42, the Commission authorized the wholesale gas cost pass-on rate increase of $0.363 per Dth, subject to notice and public hearing, which was the pass-on amount first applied for by Montana–Dakota (based upon allocations of all its Wyoming customers' test year gas purchases) and which pass-on amount was approved in the Commission's final order and sustained by the Court;

(b) In compliance with the Commission's final order and order denying Montana–Dakota's Petition for Rehearing, and pursuant to W.S. §§ 37–2–119 through 37–2–122 and the contested case provisions of the Wyoming Administrative Procedure Act, the Commission separately reduced Montana–Dakota's non-gas component of its rates by $0.0972 per Dth, based upon uncontroverted evidence of Consumer Representative Staff showing the over-earnings of the utility compared against its Commission-authorized rate of return, with Montana–Dakota's compliance tariff filing being approved effective February 12, 1992;

(c) By order entered March 27, 1992 in Laramie County District Court Docket No. 129–313, Judge Ed Grant denied Montana–Dakota's motion to stay the Commission's Final Order; and

(d) By order entered April 23, 1992 in Wyoming Supreme Court Docket No. 92–61, the Court denied Montana–Dakota's motion to stay the Commission's Final Order.

\* \* \* \* \* \*

7. \* \* \* When a rate case public hearing is set, the Commission requires that the utilities must provide complete evidence on all the issues brought into the case by the Consumer Representative Staff or other intervenors' discovery, investigation and evidence, including on the non-gas portion over-earnings issue. The Commission, even where there may be a delay in providing the benefits of a rate reduction to the affected public, grants reasonable time upon an appropriate motion for discovery and the preparation and presentation of evidence by all parties including the utility.

Montana–Dakota admitted over-earnings for its 1989, 1990 and 1991 calendar year operations (see public hearing Transcript; pages 142 through 152, 186, 217–218, and 224–225); and Montana–Dakota did not of-

fer evidence disputing the rate base, revenue, expense, or rate of return evidence of Consumer Representative Staff.

Montana–Dakota's election, over several months and at the public hearing, to rely on legal argument in place of providing rate case evidence, even in the face of actual notice that over-earnings were an issue in this docket (also refer to the above Transcript citations), should not be a basis for obtaining a retroactive rate increase, and its request is not otherwise supported, is not in the public interest, and is not provided for in the governing utility statutes or in the Court's Opinion.

This order of the PSC did not comply with this court's order of remand as set forth in *MDU I*. We there said, in pertinent part:

We hold that PSC may adjust a non-gas component in a pass-on rate increase hearing, provided that PSC adequately notifies the utility of the nature and scope of the hearing—including the specific matters upon which action may be taken.[1] **In this instance, PSC's notice was inadequate. Therefore, we reverse PSC's action in adjusting the non-gas component. We remand for further proceedings consistent with this opinion.**

*MDU I*, 847 P.2d at 993 (emphasis added). The PSC interpreted the above remand instruction to mean it could continue to impose the non-gas component of the rate established by its order of February 12, 1992, at least until a general rate-making case could be determined. The rationale for its conclusion seems to be that this court did not explicitly direct the PSC to reinstate the pre-February, 1992 non-gas component rate in its remand and the non-gas rate was set by the PSC in accordance with law. We held the non-gas component aspect of the PSC's order was invalid because of the lack of notice and a proper hearing. That invalidity is of constitutional dimensions, and we can discern no reason for the PSC to later conclude it had lawfully changed the non-gas component of

MDU customer rates. That non-gas component has not been changed from the rate which was in effect prior to September of 1991. In the general usage of the English language "reverse" is defined as to "annul," as "to overthrow (a legal decision) by a contrary decision." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1943 (1993).

■■■ We agree with the contention of MDU that the PSC order, once reversed, cannot be enforced by the PSC against MDU. In its brief, MDU presents cogent persuasive authority for this basic proposition. *Raun v. Reynolds*, 18 Cal. 275 (1861); *Public Serv. Comm'n of Indiana v. Chicago, Indianapolis & Louisville Ry. Co.*, 235 Ind. 394, 132 N.E.2d 698, *reh'g denied*, 134 N.E.2d 53 (Ind.1956); *O'Brien v. Great Northern R.R. Co.*, 148 Mont. 429, 421 P.2d 710 (1966), *cert. denied*, 387 U.S. 920, 87 S.Ct. 2034, 18 L.Ed.2d 974 (1967); *Central Montana Stockyards v. Fraser*, 133 Mont. 168, 320 P.2d 981 (1957); *Parker v. Elam*, 829 P.2d 677 (Okla.1992). The effect of *MDU I* is that this court reversed the portion of the PSC's order reducing MDU's non-gas component in its customer rates, and the purported reduction was void. The higher rate previously in effect was reinstated until lawfully adjusted in a general rate-making proceeding. The claim of the PSC that it had validly adjusted the non-gas component of MDU's rates is clearly erroneous, and its assertion to the contrary in its later order was arbitrary and capricious.

■■■ The error in the administrative proceeding was not adjusted by the PSC's conclusion to receive briefs and oral arguments. It well may be true MDU had actual notice of the intention of the PSC to deal with the non-gas components of its rate. The PSC still had never provided a notice defining those issues, and the PSC did not receive any evidence permitting it to draw a contrary conclusion. The reliance upon the findings of fact in its initial order to justify the unlawful reduction in the non-gas component of the

---

1. We did, however, caution the PSC about the incompatibility of combining the time-consuming adjustment of non-gas components in what should be a truncated pass-on hearing to adjust the gas component rate. We also hinted that

MDU's report of two years' over-earnings, based on unadjusted annual reports, would probably not serve as substantial evidence on which the PSC could not adjust the non-gas component. *MDU I*.

rate is not justified. The nullification of the reduction of the non-gas component of the rate assuredly reached to all the findings of fact and conclusions by the PSC that might support its decision.

■ To avoid any additional misconstruction of this court's ruling, we point out:

1. Initially, a defective notice was furnished to MDU with respect to the PSC's intention to adjust the non-gas component of MDU's rates in the pass-on hearing notice to adjust the gas cost component of its rate.

2. The PSC's legal adjustment of the pass-on rate and its illegal adjustment of the non-gas component of the rate as set out in its first order, dated February 12, 1992, were determined by *MDU I.*

3. The findings of fact by the PSC in its first order are correct with respect to the pass-on rate, but have no efficacy as to the non-gas component of the rate.

4. No effective notice has ever been given to MDU with respect to adjustment of the non-gas component of the rate, and no hearing on those issues has been held, due to the lack of appropriate notice and an evidentiary hearing with respect to the non-gas component of the rate.

5. The conclusion to be drawn is that the PSC, in order to effect a lawful adjustment of the non-gas component of MDU's rates, must afford it the constitutional safeguards of adequate notice and an opportunity to be heard during a formal rate-making proceeding.

■ It follows that the second order of the PSC, dated May 21, 1993, must be reversed. It was promulgated only after briefs and oral arguments and depended upon void findings of fact from its first order. There was no new notice, no evidentiary hearing, and no new findings of fact. The obvious "further proceedings consistent with" intended by the court's first opinion in this case are that the non-gas component of MDU's rates be restored as though they had never been adjusted. If the PSC chose, it could furnish an appropriate notice and a hearing with respect to general rate making. The action taken by the PSC did not meet the constitutional prin-

ciples we outlined in *MDU I,* and the order is set aside as unlawful.

■ Since, by virtue of the unlawful order of the PSC, MDU has been deprived of a part of its non-gas component of its customer rates, there is no question it is entitled to impose a surcharge. We hold the PSC must enter an order permitting a surcharge by MDU to recover the loss generated by the unlawful reduction of the non-gas component of its customer rates. We assume there will be no further misunderstanding by the PSC of the intent of this court. The period during which the non-gas component loss can be recovered by the surcharge will commence with February 12, 1992 and continue until the reinstatement of the valid non-gas component of MDU's customer rates.

The order of the PSC is reversed. The case is remanded with instructions to the PSC to set aside its unlawful order of May 21, 1993 and to enter an order reinstating the non-gas component of MDU's customer rates beginning with February 12, 1992 and continuing until those rates should be adjusted by a general rate-making proceeding. Furthermore, in that order, the PSC is directed to authorize an appropriate surcharge by MDU to recover the amounts it has lost because of the unlawful order of the PSC.