**D.L. COOK, Appellant (Petitioner),**

v.

**WYOMING OIL AND GAS CONSERVATION COMMISSION,**
**Appellee (Respondent),**

and

**North Finn, Appellee**
**(Respondent/Intervenor).**

No. 93–280.

Supreme Court of Wyoming.

Aug. 29, 1994.

Neil J. Short, Casper, for appellant.

Roberta L. Rinegar, Asst. Atty. Gen., Casper, for appellee Wyoming Oil and Gas Conservation Com'n.

Thomas F. Reese of Brown & Drew, Casper, for appellee North Finn.

Before GOLDEN, C.J., THOMAS, MACY and TAYLOR, JJ., and CARDINE, J. (RET.)

MACY, Justice.

Appellant D.L. Cook sought review in the district court of Appellee Wyoming Oil and Gas Conservation Commission's report, wherein the Commission approved Appellee North Finn's application to add land to the North Carson Muddy Unit (the Unit) and denied Cook's application for a special order to protect his correlative rights. The Commission had changed its interpretation of WYO.STAT. § 30–5–110 (1983) with regard to the percentage of approval which was required from non-cost-bearing interests and cost-bearing interests for the expansion of an existing secondary recovery unit. The district court certified the case to this Court for review.

We affirm.

Cook articulates two issues:

1. Whether the Wyoming Oil and Gas Conservation Commission acted in an arbitrary and capricious manner by reversing its interpretation and application of W.S[.] § 30–5–110(h), (j).

2. Whether the "new" interpretation and application of W.S. § 30–5–110(h), (j) by the Wyoming Oil and Gas Conservation Commission must be applied prospectively only and therefore cannot be applied to this case.

The Commission originally approved the application in 1989 for the Unit to operate as a secondary recovery unit in Campbell County, Wyoming. North Finn was the operator of the Unit, and Cook owned interests in the Unit. A well was subsequently drilled outside the Unit in order to offset the Unit's production. Cook also owned interests in that well (the Cook well). The Cook well was located on a tract of land (the Cook tract) which was situated directly east of the southern portion of the Unit. Bottom-hole pressure tests revealed that the Cook well was draining the same reservoir as was being drained by the Unit.

North Finn was concerned that hydrocarbons would be swept from the Unit to the Cook tract when secondary recovery injection processes were being conducted in the southern portion of the Unit. Consequently, North Finn began its secondary recovery operations in the northern portion of the Unit. In February 1993, North Finn determined that it was time to begin conducting secondary recovery operations in the southern portion of the Unit. North Finn applied to the Commission for permission to expand the Unit to include the Cook tract.

Originally, North Finn's application was not formally contested. A hearing examiner held a hearing in March 1993 on North Finn's application. After the hearing, the examiner found that all the statutory requirements for the expansion of an existing unit had been met except the requirement that North Finn secure approval of the expansion from one hundred percent of the non-cost-bearing interests and the cost-bearing interests in the proposed expanded unit area. Cook refused to approve the expansion plan.

Historically, the Commission had interpreted § 30–5–110(h) and (j) "to mean that, in order to add new land to a unit previously established under W.S. § 30–5–110, there must be one hundred percent agreement among [cost-bearing] interest[s] and [non-cost-bearing interests] in both the original unit and the land to be added to the unit." Because the hearing examiner was not sure about the percentage of approval which was required for the expansion of an existing unit, he referred the matter to the Commission.

The Commission held a hearing, during which it considered arguments from all interested parties with regard to the proper interpretation of the statutory provisions. At the conclusion of that hearing, the Commission ruled that its previous requirement of approval from one hundred percent of all non-cost-bearing interests and cost-bearing interests in a proposed expanded unit area was incorrect under the statutory language. The Commission ruled that the statute required approval of the expansion plan from eighty percent of all cost-bearing interests and from eighty percent of all non-cost-bearing interests in the proposed expanded unit area.

Two months later, the Commission held a hearing on both North Finn's application for permission to expand the Unit and Cook's application for protection of his correlative rights. At the conclusion of the hearing, the Commission ordered "that the application of North Finn ... be and [is] hereby approved, subject only to obtaining the consent of at least eighty percent (80%) of the non-cost-bearing interests and at least eighty percent (80%) of the cost-bearing interests." The Commission denied Cook's application.

Cook appealed to the district court from the Commission's decisions. The district court certified the case to us pursuant to W.R.A.P. 12.09(b).

"When a case is certified to this court pursuant to Rule 12.09, W.R.A.P., we examine the decision of the administrative agency as if we were the reviewing court of the first instance. The authority vested in a reviewing court is set forth in § 16–3–114(c)...."

*Montana Dakota Utilities Co. v. Public Service Commission of Wyoming*, 847 P.2d 978, 983 (Wyo.1993), *appeal after remand*, 874 P.2d 236 (Wyo.1994) (quoting *Union Telephone Company, Inc. v. Wyoming Public Service Commission*, 821 P.2d 550, 556 (Wyo.1991) (citations omitted)). *See also Thunder Basin Coal Company v. Study*, 866 P.2d 1288, 1290 (Wyo.1994).

█ In his first issue, Cook does not argue that the Commission's new interpretation of the statute was incorrect. Accordingly, we will not determine in this case whether the Commission properly interpreted the relevant statutory provisions. Cook's sole contention with regard to this issue is that the Commission acted arbitrarily and capriciously by refusing to follow its prior interpretation of the statute. He argues that the Commission's

interpretation and application of W.S. § 30–5–110 was so well-established and so well-understood that the sudden, abrupt change in policy would have significant impact in the oil and gas industry. In matters of this great import the [Commission] is bound by its prior position. The sudden, abrupt change is arbitrary and capricious.

Cook's argument is inconsistent with Wyoming case law. In *Amoco Production Company v. Wyoming State Board of Equalization*, 797 P.2d 552 (Wyo.1990), we stated: "If, in fact, the statute was not being enforced as the legislature intended, the [agency] acted properly when it corrected that oversight." 797 P.2d at 555.

█ The Commission did not act in an arbitrary and capricious manner simply because it changed its interpretation of the statute. Indeed, the Commission is legally required to enforce the law as it has been drafted by the Legislature. *See id.*

█ In his second issue, Cook argues that the Commission erred by applying its new interpretation of the statute to the Unit. He argues that the interpretation may be used only prospectively. As a matter of law, we hold that the Commission did not err by applying its new interpretation to the Unit.

█ Cook suggests that the new interpretation "is tantamount to the promulgation of new legislation and to the repeal or amendment of existing legislation." We disagree. The Commission's new interpretation is not new legislation. The Commission has neither the power nor the authority to adopt legislation. Instead, the Commission is under an affirmative legal duty to implement the laws which are adopted by the Legislature. *See* 797 P.2d at 555.

█ The Commission's new interpretation of § 30–5–110 was not applied retroactively in this case. The Commission announced its

new interpretation of the statute on July 13, 1993. The full hearing on North Finn's application to expand the unit and on Cook's application for protection of his correlative rights was not held until September 8, 1993. A statute has not necessarily been applied retroactively because it has relied upon antecedent facts for its operation. *BHP Petroleum Company, Inc. v. State,* 784 P.2d 621, 626 (Wyo.1989) (quoting *Belco Petroleum Corporation v. State Board. of Equalization,* 587 P.2d 204, 210 (Wyo.1978)). *See also Amoco Production Company v. Hakala,* 644 P.2d 785, 788 (Wyo.1982).

By conducting a full hearing on the expansion of the Unit in September 1993, the Commission gave Cook precisely the relief which he requested at the July 13, 1993, hearing:

> [L]et's assume for a second that [the Commission] adopted the ·80 percent total, just so [the Commission] know[s] before [it] go[es] to lunch and the record is clear, we will ask [the Commission] to make that a prospective decision and not include this North Carson Unit, because, as [the Commission] say[s] accurately in [its] notice, historically the [C]ommission has taken the [position] that [it] do[es] not have the authority to add lands to an established unit unless 100 percent of all parties agree, ***and/or, either [the Commission] appl[ies] the 100 percent to the North Carson Unit or [it] reopen[s] the hearing on that unit to see if the addition is feasible, if it's economic[al], if Mr. Cook is being treated properly and so on.***

(Emphasis added.)

Affirmed.