**ROCK SPRINGS FORD NISSAN,**
Appellant (Petitioner),

v.

**STATE BOARD OF EQUALIZATION, WYOMING DEPARTMENT OF REVENUE; Albert Vesco, in his official capacity as Sweetwater County Clerk; and Robb Slaughter in his official capacity as Sweetwater County Treasurer, Appellees (Defendants).**

No. 94–87.

Supreme Court of Wyoming.

Feb. 27, 1995.

James R. Belcher and Lawrence J. Wolfe of Holland & Hart, Cheyenne, representing appellant.

Joseph B. Meyer, Atty. Gen., Michael L. Hubbard, and Vicci M. Colgan, Sr. Asst. Attys. Gen., for State Bd. of Equalization and Gayle R. Stewart, Civil Deputy, Sweetwater County and Pros. Atty., for Sweetwater County Clerk and Treasurer.

Before GOLDEN, C.J., and THOMAS, MACY, TAYLOR and LEHMAN, JJ.

LEHMAN, Justice.

Rock Springs Ford Nissan (Ford Nissan) appeals from a ruling by the Wyoming State Board of Equalization (Board) finding Ford Nissan liable for sales tax due on a vehicle which is unpaid by a defaulting buyer when the dealership subsequently repossesses the vehicle and seeks to obtain the title from the county clerk.

We affirm.

Ford Nissan raises two issues:

1. Did the Board of Equalization err in ruling that Rock Springs Ford Nissan, a duly licensed automobile dealer, is liable for sales tax the purchaser failed to pay?

2. Did the Board of Equalization err in ruling that the acquisition of a title to a repossessed vehicle by Rock Springs Ford Nissan, a duly licensed automobile dealer, constitutes a taxable event giving rise to imposition of sales tax, and in imposing sales tax for which there is no evidence of sales price?

The Board states the issues as:

1. Whether Rock Springs Ford Nissan is liable for sales tax under W.S. 39-6-410(a) as a party to the transaction.

2. Whether Rock Springs Ford Nissan is liable for sales tax under W.S. 39-6-402(a)(iii)(J) and W.S. 39-6-407(a).

### BACKGROUND

In Wyoming, sales taxes are usually collected by the vendor at the time of the transaction and later remitted by the vendor to the state. W.S. 39-6-407(a) (1994). An exception to this procedure, however, has been created for vendors of motor vehicles. W.S. 39-6-406(a) (1994). In that situation, the sales tax is collected by the county treasurer prior to the first registration of the vehicle in Wyoming. *Id.* The dispute in this case centers around who is liable for the sales tax when the purchaser of a vehicle fails to pay the tax.

Ford Nissan sought to obtain from the county clerk title to a vehicle which had been repossessed. The purchaser had never registered the vehicle, thus the sales tax had never been paid. The county clerk refused to release the title until the tax was paid. Ford Nissan paid the tax and appealed to the Department of Revenue for a refund. The Department denied the appeal, and Ford Nissan appealed to the Board.

The Board ruled that Ford Nissan was liable for the tax. The Board found liability on two alternative grounds:

10. * * * Although W.S. 39–6–406(a) prohibits a vendor from collecting sales tax upon sale of a motor vehicle, specifically providing the taxes are to be collected by the county treasurer prior to first registration in Wyoming, such prohibition applies only to the "collectibility" of sales tax, not the liability therefor. Under W.S. 39–6–410(a), it is clear any tax due is a debt from the "persons who are the parties to the transaction," which in this situation, is Petitioner [Ford Nissan] and [the purchaser]. It is of particular interest to note this statutory provision discusses "persons" and "parties," not vendor/purchaser, the language used when the "collectibility" of sales tax is discussed. We believe this distinction is intentional, and while recognizing W.S. 39–1–406(a) exempts an automobile dealer from the requirement of sales tax collection upon sale, the same does not exempt the dealer from the liability established by W.S. 39–6–410(a).

11. Having concluded an automobile dealer is liable for unpaid sales tax under W.S. 39–6–410(a), the final issue concerns whether unpaid sales tax can be collected when a dealer makes application for a repossession title pursuant to W.S. 31–2–104(c). Although 104(c) is silent as to sales tax, assistance can be found in Title 39, particularly 39–6–402, wherein "sale" is defined for purposes of sales tax liability. Pursuant to W.S. 39–6–402(a)(iii)(J), a sale is any transfer of title or possession for consideration, excluding an exchange or transfer of tangible personal property upon which the seller has directly, or indirectly, paid sales tax incidental to repossession. The statute thus by definition exempts an exchange or transfer of personal property in repossession if "the seller has directly, or indirectly paid sales or use tax." In the particular factual situation herein, the sales tax due on the underlying transfer has not "directly, or indirectly" been paid by the seller, or any other party. Thus by definition, the sales tax on the underlying transaction not having been paid, and the seller thus neither directly nor indirectly having paid sales tax incident to repossession, the acquisition of a repossession title as a transfer of title is considered "a sale," and sales tax is due and owing.

Ford Nissan disagreed with the Board's decision, and this appeal is now before us.

## STANDARD OF REVIEW

We review rulings of the Board under the standards established by W.S. 16–3–114 (1990). *Enron Oil & Gas Co. v. Fruedenthal*, 861 P.2d 1090, 1092 (Wyo.1993). We will affirm the agency's decision if it is supported by substantial evidence, is not arbitrary and capricious, and is in accordance with law. W.S. 16–3–114(c)(ii)(A) & (E); *State Bd. of Equalization v. City of Lander*, 882 P.2d 844, 847 (Wyo.1994).

## DISCUSSION

The resolution of this case hinges upon the interplay of two statutes: W.S. 39–6–406(a) (1994) and W.S. 39–6–410(a) (1994). The first statute, W.S. 39–6–406(a), prohibits vendors of motor vehicles from collecting the sales tax:

[N]o vendor shall collect taxes imposed by this article upon the sale of motor vehicles, house trailers, trailer coaches, trailers or semitrailers. The taxes imposed shall be collected by the county treasurer prior to the first registration in Wyoming and not upon subsequent registration by the same applicant[,]

while W.S. 39–6–410(a) concerns liability for the tax:

Any tax due under this article constitutes a debt to the state from the persons who are parties to the transaction and is a lien from the date the tax is due on all the real and personal property of those persons.

Ford Nissan argues that it is sheltered from liability for the tax because it is barred from collecting the tax. Ford Nissan supports its argument by asserting that the Department, by imposing liability on the motor vehicle vendor, has departed from a longstanding interpretation of the pertinent statutes and that the legislative history of the Sales Tax Code supports its position. Ford Nissan claims that the general statute, § 410(a) which creates liability for sales tax, cannot override the more specific statute,

§ 406(a) prohibiting them from collecting the tax, especially since the latter predates the enactment of § 410(a).

When confronted with the interpretation of a statute, we focus on the intent of the legislature as expressed in the statute, using the ordinary and obvious meaning of the words contained therein. *In Interest of MFB*, 860 P.2d 1140, 1145 (Wyo.1993). We will go outside the plain language of a statute and resort to general principles of statutory construction to ascertain legislative intent only if the statute is subject to different meanings. *Amrein v. State*, 836 P.2d 862, 864 (Wyo.1992). Statutes are interpreted so that each word, clause and sentence is given meaning and no part is rendered inoperative or superfluous. *Hamlin v. Transcon Lines*, 701 P.2d 1139, 1142 (Wyo.1985).

■ The problem with Ford Nissan's approach is that it ignores the intent of the legislature as unambiguously stated in the two statutes. Reading the statutes as suggested by Ford Nissan would effectively nullify the language of § 410(a); we would be reading an exception into the language "constitutes a debt to the state from the persons who are parties to the transaction and is a lien" when none exists in the statute. Section 406(a) simply sets out an alternative procedure for collection of the sales tax on the sale of certain types of vehicles. It does not mention, let alone eliminate, the liability of all parties to a transaction for the sales tax as set out in § 410(a). Whether the agency has now changed a long-standing practice is irrelevant. The agency is legally required to enforce the sales tax statutes as they have been drafted by the legislature. *Cook v. Wyoming Oil & Gas Conservation Comm'n*, 880 P.2d 583, 585 (Wyo.1994).

■ Nor are we persuaded by Ford Nissan's argument that a specific statute controls over a more general one. While in certain situations that may be so, it is not here for the simple reason that the two statutes speak to different subjects. *See L.U. Sheep Co. v. Bd. of County Comm'rs*, 790 P.2d 663, 674 (Wyo.1990). One, § 406(a), concerns who is responsible for collecting sales tax on the sale of certain types of vehicles, while the other, § 410(a), concerns who is indebted to the state for the tax when a sale is made. Certainly both statutes relate to sales tax, but they are interested in different aspects—collectibility and liability. They are not the same thing, notwithstanding Ford Nissan's valiant efforts to the contrary.

■ The rule that a specific statute controls over a general statute on the same subject is only a rule of statutory interpretation used to discern legislative intent. *L.U. Sheep Co.*, 790 P.2d at 674. We find nothing in the statutes which suggests that the legislature intended to exempt motor vehicle vendors from the sales tax liability found in W.S. 39-6-410(a). Ford Nissan's argument that the legislature must have so intended since § 410(a) was enacted after § 406(a) is unpersuasive. The legislative history can easily be read to stand for the opposite of Ford Nissan's position. The fact that there is not an explicit exemption from sales tax liability in § 410(a) or any other statute while, conversely, there is an explicit exemption for the requirement to collect taxes in § 406(a) implies that the legislature did not intend to excuse motor vehicle vendors from the liability provisions of § 410(a). In any event, we have found the statute unambiguous; and the language of § 410(a) creates a debt to the state from a motor vehicle vendor when the purchaser fails to pay the required sales tax.

■ We also agree with the Board on its finding of liability for the unpaid tax based on W.S. 39-6-402(a)(iii)(J), which provides:

(a) As used in this article:

\*     \*     \*     \*     \*     \*

(iii) "Sale" means any transfer of title or possession for a consideration including the fabrication of tangible personal property when the materials are furnished by the purchaser but excluding an exchange or transfer of tangible personal property upon which the seller has directly or indirectly paid sales or use tax incidental to:

\*     \*     \*     \*     \*     \*

(J) The repossession of personal property by a chattel mortgage holder or foreclosure by a lienholder.

It is undisputed that the sales tax on the truck sold by Ford Nissan had never been paid when repossession occurred here. There can be no doubt that a repossession is considered by the legislature as a sale, otherwise there would not have been a need to create § 402(a)(iii)(J) and to state that when the seller has paid the sales tax, directly or indirectly, then the repossession is not a sale. If a repossession were not a sale, then § 402(a)(iii)(J) would be superfluous. The Board correctly found that Ford Nissan was also liable for the sales tax under this statute.

### CONCLUSION

Ford Nissan is liable for the unpaid sales tax under the authority of W.S. 39–6–410(a) and 39–6–402(a)(iii)(J). Therefore, the Board did not act arbitrarily, capriciously or not in accordance with law, and its decision is affirmed.